******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BERKSHIRE BANK *v.* THE HARTFORD CLUB ET AL.
(AC 36711)

Gruendel, Alvord and West, Js.

*Argued March 11—officially released July 28, 2015*

(Appeal from Superior Court, judicial district of Hartford, Vacchelli, J. [summary judgment]; Robaina, J. [foreclosure by sale].)

*John W. Larson*, with whom was *Eric Henzy*, for the

appellant (named defendant).

*Matthew T. Wax-Krell*, with whom, on the brief, was *Michael D. Blumberg*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant The Hartford Club appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Berkshire Bank.[1] On appeal, the defendant claims that the court improperly granted the plaintiff's motion for summary judgment as to liability because the affidavits and exhibits offered in support of the motion were (1) not admissible evidence with respect to the plaintiff's status to enforce the negotiable instrument at issue, and (2) insufficient to establish the absence of a genuine issue of material fact.[2] We disagree and affirm the judgment of the trial court.

The court's memorandum of decision and the record reveal the following facts and procedural history. On July 17, 2009, the defendant executed an open-end mortgage in favor of The Connecticut Bank and Trust Company (CBT) on property located on Prospect Street in Hartford to secure the payment of a promissory note in the principal amount of $977,000. Effective April 20, 2012, CBT merged with and into the plaintiff, under the charter, bylaws and name of Berkshire Bank. The plaintiff commenced the present foreclosure action when payments of principal and interest that were due on November 17, 2012, and thereafter, were not made as required by the terms of the loan documents. In its complaint dated June 17, 2013, the plaintiff sought, inter alia, a judgment of foreclosure, a deficiency judgment and attorney's fees.

On August 19, 2013, the defendant filed an answer with one special defense, which alleged that "the ownership interest of the [p]laintiff in the subject mortgage has not been established." The plaintiff filed a reply to the defendant's answer and special defense, in which it denied the allegations in the special defense. On October 9, 2013, the plaintiff filed a motion for summary judgment as to liability, claiming that a prima facie case for foreclosure had been established and that there were no remaining issues of fact. With its motion for summary judgment, the plaintiff filed a memorandum in support of the motion and the affidavit of Thomas S. Matejek, the plaintiff's vice president. The defendant filed a memorandum in opposition to the plaintiff's motion for summary judgment on November 20, 2013. No affidavits or documents were filed with the defendant's memorandum. On November 21, 2013, the plaintiff filed a supplemental affidavit of Matejek in support of its motion for summary judgment. The defendant filed a supplemental memorandum in opposition to the motion for summary judgment on December 11, 2013, again, with no affidavits or documents, and a hearing was held on December 16, 2013.

On January 13, 2014, the court issued its memorandum of decision rendering summary judgment in favor

of the plaintiff as to liability only. The plaintiff filed a motion for a judgment of strict foreclosure on March 12, 2014. On March 18, 2014, the defendant filed a motion for a judgment of foreclosure by sale. Thereafter, the court rendered a judgment of foreclosure by sale. This appeal followed.

On appeal, the defendant claims that the court improperly granted the plaintiff's motion for summary judgment as to liability. It argues that the court should not have concluded that Matejek's affidavits and the letter from a Massachusetts banking official certifying the merger of CBT with and into the plaintiff (certificate)[3] constituted "admissible evidence regarding the plaintiff's ability to enforce the negotiable instrument in question." The defendant claims that the affidavits are deficient because they (1) "do not chronicle the chain of title of the note," (2) include only Matejek's unsupported statement that the plaintiff owns the note, (3) fail to include a statement that CBT was the holder and owner of the note at the time of the merger, and (4) fail to state the basis for Matejek's averment that he had personal knowledge of the statements within the affidavits. The defendant further argues that the certificate was not admissible evidence because it was not the best evidence of the alleged merger. Additionally, it is the defendant's position that, even if the challenged documents were admissible evidence, they were insufficient to establish the right of the plaintiff to enforce the note. According to the defendant: "What [the plaintiff] asked the trial court to do was draw inferences based on [the plaintiff's] possession of the note and evidence of doubtful admissibility of a merger that [the plaintiff] is a nonholder in possession with the right to enforce the note."

"The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue

of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . *The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence.* . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Shivers*, 136 Conn. App. 291, 295–96, 44 A.3d 879, cert. denied, 307 Conn. 938, 56 A.3d 950 (2012).

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage,[4] that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

In the present case, the plaintiff submitted the two Matejek affidavits. In those affidavits, Matejek averred that he was the plaintiff's vice president and that he had personal knowledge of the facts stated in the affidavits. Particularly relevant were Matejek's following sworn statements: (1) he reviewed the subject note and mortgage; (2) the plaintiff was the successor in interest to CBT; (3) CBT merged with and into the plaintiff under the plaintiff's charter and bylaws and name effective April 20, 2012; (4) the defendant was in default as a result of its failure to make any principal payment due under the note since December 27, 2012, which payment was for the installment that was due on October 17, 2012; (5) the plaintiff sent the defendant a letter on April 11, 2013, accelerating the entire indebtedness under the note; (6) the defendant failed to cure its default; (7) on

July 24, 2013, the parties entered into an agreement wherein the plaintiff represented that it would not file any additional pleadings in the foreclosure action until August 19, 2013, to afford the defendant the opportunity to bring the interest current on the note, but the defendant failed to pay the requisite amount; (8) Matejek was personally familiar with the plaintiff's books and records with respect to the amount owed by the defendant; and (9) the plaintiff was the owner of the subject note, mortgage, assignment of rents and all other loan documents executed in connection with the defendant's debt. The defendant did not file a counteraffidavit or any documentary evidence at any time to contradict the plaintiff's evidence or to support its special defense to the action. Instead, the defendant relied on its arguments that the Matejek affidavits and the certificate were not admissible evidence and that, even if admissible evidence, they were insufficient to show that the plaintiff had the right to enforce the note.

We begin with basic principles governing the enforcement of the note at issue, which the parties agree is a negotiable instrument. The mortgage note, as a negotiable instrument, is governed by the provisions of Connecticut's Uniform Commercial Code (UCC) concerning negotiable instruments, General Statutes § 42a-3-101 et seq. *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 709, 41 A.3d 1077 (2012). Under the UCC, a person entitled to enforce an instrument includes the holder of the instrument or a nonholder in possession of the instrument who has the rights of a holder. General Statutes § 42a-3-301. "The UCC's official comment underscores that a person entitled to enforce an instrument . . . is not limited to holders. . . . A nonholder in possession of an instrument includes a person that acquired rights of a holder . . . under [§ 42a-3-203 (a)]. . . . Under § 42a-3-203 (b), [t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument . . . . An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. General Statutes § 42a-3-203 (a)." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 319–20, 71 A.3d 492 (2013). "Accordingly, a note that is unendorsed still can be transferred to a third party. Although that third party technically is not a holder of the note, the third party nevertheless acquires the right to enforce the note so long as that was the intent of the transferor." *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, supra, 709–10.

Here, the note at issue is payable to CBT or order, and it was not endorsed to the order of the plaintiff. The plaintiff is the successor in interest to CBT by virtue of a merger, which became effective April 20, 2012. It

is undisputed that the plaintiff was in possession of the original note and mortgage at all relevant times. The trial court determined that the plaintiff was not the "holder" of the note; see General Statutes § 42a-1-201 (b) (21) (A); because the note was not payable to bearer or to an identified person who is the person in possession of the note. The court further determined that the plaintiff was a nonholder in possession of the instrument who had the rights of a holder (CBT) as the "transferee" by merger. Through the affidavits and attached exhibits, which were not contradicted by a counteraffidavit or any documentary evidence by the defendant, the court concluded that the plaintiff was the owner of the note and had documented the essential facts supporting its right to enforce the note. We agree with the trial court.

The claims of the defendant addressed to its argument that the affidavits and certificate were not admissible evidence are not persuasive. The defendant argues that the affidavits were deficient because they did "not chronicle the chain of title of the note." This argument is comparable to the chain of custody argument raised in *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 604–605, 717 A.2d 713 (1998). In that case, our Supreme Court rejected the notion that a proponent must prove a chain of custody in order to authenticate a business record. Id. Any gap or break in the chain of custody goes to the weight of the evidence rather than its admissibility. Id. Our Supreme Court provided the following policy reason for adopting such a rule: "To require testimony regarding the chain of custody of such documents, from the time of their creation to their introduction at trial, would create a nearly insurmountable hurdle for successor creditors attempting to collect loans originated by failed institutions." Id., 605.

The defendant's arguments that the affidavits were inadmissible evidence because there was no support for Matejek's statement that the plaintiff owned the note and they lacked a statement that CBT was the holder and owner of the note at the time of the merger likewise fail. Matejek's averred statements that he had reviewed the records of CBT and the plaintiff and that CBT had merged into Berkshire Bank, together with the undisputed fact that the plaintiff had possession of the original note and mortgage, supported Matejek's statement that the plaintiff was the owner of the note. The failure to include a statement that CBT was the holder and owner of the note at the time of the merger did not preclude the court from rendering summary judgment as to liability. The defendant has provided no more than a mere allegation that CBT may have divested itself of the ownership of the note before the merger. No evidence whatsoever was provided in support of such an allegation and, significantly, the plaintiff had possession of the original note and mortgage. Accord-

ingly, this allegation, without more, did not create a genuine issue of material fact under the circumstances of this case.

We also reject the defendant's claim that the affidavits were not admissible evidence because Matejek failed to state the basis for his sworn statement that he had personal knowledge of the information contained in the affidavits. "The witness' personal knowledge goes to the weight of the evidence, not to its admissibility." *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 376, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999). Furthermore, as previously noted, Matejek averred that he had reviewed the business records of the plaintiff and CBT. "The defendant provides no authority, and we know of none, that precludes affiants from obtaining personal knowledge of underlying transactions by review of business records. Under General Statutes § 52-180, to be competent to testify, the affiant need only have personal knowledge of the relevant business records." (Footnote omitted; internal quotation marks omitted.) *American Home Mortgage Servicing, Inc.* v. *Reilly*, 157 Conn. App. 127, 136, A.3d (2015).

With respect to the certificate, the defendant claims that the letter from the Deputy Commissioner of Banks and General Counsel, Division of Banks of the Commonwealth of Massachusetts, certifying that its records indicate that the merger of CBT with and into the plaintiff was effective April 20, 2012, was not admissible evidence. The defendant argues that the certificate was not the best evidence of the merger and that "the relevant merger documents" should have been produced. The defendant provided no evidence whatsoever that the merger did not take place or that the contents of the certificate were inaccurate. Furthermore, "[t]he best evidence rule is a preferential, rather than an exclusionary rule." *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 453, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002).

For the foregoing reasons, the court did not rely on inadmissible evidence when it rendered its summary judgment. The evidence presented by the plaintiff, as contained in the affidavits and certificate, as well as the fact that the plaintiff was in possession of the original note and mortgage, were sufficient to establish that the plaintiff had the requisite authority to enforce the note. The plaintiff's vice president, after reviewing the business records of the plaintiff and CBT, and upon his personal knowledge, averred that the note signed by the defendant was payable to CBT, that the $977,000 debt was secured by a mortgage on the defendant's Prospect Street property, that the plaintiff was the successor in interest to CBT by virtue of a merger that was effective April 12, 2012, that the defendant was in default because it failed to make payments of principal

and interest that were due on November 17, 2012, and thereafter, that the plaintiff notified the defendant of its default, that the plaintiff exercised its option to accelerate the entire indebtedness under the note, that the defendant failed to cure its default, and that the plaintiff was the owner of the note, mortgage and related loan documents.[5]

It is difficult to draw any other inference from the facts here except that the note and related loan documents were transferred from CBT to the plaintiff at the time of the merger and that the plaintiff was the owner of the note and mortgage when it commenced the foreclosure action. The plaintiff established an undisputed prima facie case. Without any evidence to contradict the plaintiff's evidence, there was no evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Accordingly, we conclude that the court did not err in rendering summary judgment in favor of the plaintiff.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.

[1] Two subsequent encumbrancers also were named as defendants in this action, but they are not parties to this appeal. We therefore refer in this opinion to The Hartford Club as the defendant.

[2] Because these two claims are interrelated, we address them together in this opinion.

[3] The certification from the Division of Banks of the Commonwealth of Massachusetts was attached to both affidavits and provided as follows: "This letter is to certify that records currently in the possession of the Division of Banks indicate that The Connecticut Bank and Trust Company, Hartford, Connecticut, merged with and into Berkshire Bank, Pittsfield, Massachusetts under the charter, by-laws and name of Berkshire Bank effective April 20, 2012. Berkshire Bank continues to operate as a state-chartered savings bank under the provisions of Massachusetts General Laws chapter 168 and other related statutes subject to supervision and examination by the Commissioner of Banks." The letter was signed by Joseph A. Leonard, Jr., the deputy commissioner of banks and general counsel.

[4] Our Supreme Court has concluded that standing to enforce a note extends to a holder in possession of the note, who is presumed to be the owner of the debt unless the presumption is rebutted; *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 231–32, 32 A.3d 307 (2011), overruled in part by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.18, 71 A.3d 492 (2013); and to a plaintiff who is not the owner or holder of the note and mortgage if it otherwise has established the right to enforce those instruments. *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 327–28, 71 A.3d 492 (2013).

[5] The affidavits additionally provided the amounts due as a result of the defendant's default, but the amount of the debt has not been challenged on appeal.